United States District Court
Southern District of New York
--------------------------------------------------------x

Alpha Capital Anstalt,

                         Plaintiff,

                                                                          07 CV 11430 (CM)

vs.

Silver Dragon Resources, Inc.,

                         Defendant.

--------------------------------------------------------x

        Memorandum of Law Submitted by Plaintiff Alpha Capital Anstalt
        In Opposition To The Motion By Defendant Silver Dragon Resources, Inc.
        <u>To Set Aside The Preliminary Injunction Granted By Default</u>

      Plaintiff Alpha Capital Anstalt ("Alpha Capital") submits this Memorandum of Law in opposition to the motion by Defendant Silver Dragon Resources, Inc. ("SDRG") to set aside the preliminary injunction granted by default. SDRG's motion is based upon the factual premises that neither it nor its counsel had copies of the correct Schedule 5(d) prior to the time the deal closed on November 8, 2006, that there existed a Schedule 5(d) which in fact exempted the warrant issuance on November 2, 2007 from the operation of the Favored Nations provision of the Subscription Agreement, and that Alpha Capital's counsel somehow delivered the wrong Schedule 5(d) to SDRG's counsel on December 18, 2006 to which SDRG's counsel since that time never objected.

      The facts upon which SDRG's motion is based are false, based upon the contemporaneous documentary evidence, as set forth in the Brand Affirmation. SDRG's counsel certainly

prepared, reviewed and revised Schedule 5(d) several times prior to the closing on Alpha Capital's purchase of SDRG's securities. There never existed a Schedule 5(d) which exempted the warrant issuance on November 2, 2007 from the operation of the Favored Nations provision of the Subscription Agreement and the correct final copy of Schedule 5(d) was delivered to SDRG on December 18, 2007. SDRG does not contest that, on the documents presented by Alpha Capital to the Court on its motion for a preliminary injunction, Alpha Capital suffered irreparable harm warranting injunctive relief. If the Court discounts those untrue facts set forth in the Hazout Affirmation, SDRG presents no evidence that Alpha Capital did not also have an overwhelming likelihood of success on the merits of its claim, all as set forth in the Ackermann affirmation (Exhibit K to the Brand Affirmation) upon which the preliminary injunction was granted. There is simply no basis for this Court to re-open SDRG's default or to withdraw the preliminary injunction previously granted.

The facts of this matter have been adequately set forth in the Affirmation of Asher Brand served herewith and will not be repeated herein.

<u>Argument</u>

<u>Point 1</u>

SDRG Has Not Established Any Grounds To Re-Open Its
<u>Default Or To Set Aside The Preliminary Injunction Order</u>

The standard for a party seeking to re-open a default was set forth by the court in *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) as follows:

2

> Rule 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed.R.Civ.P. 55(c). Because Rule 55(c) does not define the term "good cause," we have established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment. These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.

See also: *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) ("In deciding a motion to vacate a default judgment, the district court is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice."); *Angel v. Queens Blvd. Car Wash*, 2008 WL 111159 at *2 (E.D.N.Y. Jan. 8, 2008); *Roberts v. Keith*, 2007 WL 2712853 at *2 (S.D.N.Y. Sept. 18, 2007).

SDRG's motion to set aside its default must be denied because it has no meritorious defense, Alpha Capital will suffer prejudice if the preliminary injunction order is vacated and it appears that SDRG's default was willful.

A. <u>SDRG Has Not Established A Meritorious Defense</u>

As is set forth in the Brand affirmation, there is no dispute that Schedule 5(d) does not exempt SDRG's warrant issuance on November 2, 2007 from the application of the Favored Nations provision of the Subscription Agreement. Stephen Cohen, SDRG's attorney,

3

undisputably drafted, reviewed and revised Schedule 5(d) prior to the closing of the transaction. A Schedule 5(d) exempting the warrant issuance herein at issue from the Favored Nations provision of the Subscription Agreement never existed. Since December 18, 2006, neither Cohen nor Hazout ever claimed that the Schedule 5(d) forwarded by Barbara Mittman on that date was not the correct and agreed upon Schedule 5(d).

The Subscription Agreement is a fully integrated document containing an explicit integration clause which provides that it contains the entire agreement of the parties. Thus paragraph 12(c) of that agreement provides:

> Entire Agreement; Assignment: This Agreement and the other documents delivered in connection herewith represent the entire agreement between the parties hereto with respect to the subject matter hereof and may be amended only by a writing executed by both parties. Neither the Company nor the Subscribers have relied on any representations not contained or referred to in this Agreement and the documents delivered herewith.

The law is clear that where, as here, a contract is full and complete on its face, the court cannot consider parol evidence to vary the terms or meaning of the contract. As is stated in 58 N.Y. Jur.2d, *Evidence*, § 564 (2000 ed.):

> The general principle known as the "parol evidence" rule provides that where the parties to a contract have deliberately put their entire engagement in writing in such terms as to import a legal obligation without any uncertainty as to the object and extent of such engagement, extrinsic evidence of prior or contemporaneous conversations, statements, or declarations tending to substitute a

4

> contract different from that evidenced by the writing is
> inadmissible, since all agreements which would be shown by such
> extrinsic evidence are conclusively presumed to have been merged
> in the writing. . . . Moreover, the rule is not strictly one of
> evidence, but rather one of substantive law.

See also: *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993) ("Under New York law . . . if a contract recites that all of the parties' agreements are merged in the written document, parol evidence is not admissible to vary, or permit escape from, the terms of the integrated contract."); *W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639, 642 (1990) ("Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing."); *Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.*, 111 F.Supp.2d 450, 454 (S.D.N.Y.,2000) ("[T]he parol evidence rule bars the consideration of extrinsic evidence of the meaning of a complete written agreement if the terms of the agreement, considered in isolation, are clear and unambiguous. . . Moreover, the parol evidence rule is a rule of substantive law rather than one of procedure or evidence.").

The Subscription Agreement is clear on its face. There can be, and there is, no dispute that by its terms the warrant issuance on November 2, 2007 triggers the operation of the Favored Nations provision because it was not listed on Schedule 5(d) as an Exempt Issuance and, therefore, that Alpha Capital is entitled to the additional 333,333 shares of stock which the Court ordered SDRG to deliver immediately to Alpha Capital. Thus Alpha Capital has established an overwhelming likelihood of success on the merits of its claim. SDRG does not even contest that

Alpha Capital, on its initial motion, established irreparable harm. SDRG has not established that it has any meritorious defense to Alpha Capital's motion for a preliminary injunction.

B. <u>Setting Aside The Default Will Prejudice Alpha Capital</u>

Hazout contends (Hazout Affidavit, ¶26-28) that Alpha Capital will suffer negligible harm if the default is re-opened because, according to Hazout, SDRG is now prepared to move quickly and efficiently to oppose Alpha Capital's request for a preliminary injunction. That is untrue. Preliminarily, it is interesting to note that SDRG moved to set aside the default by notice of motion, rather than by order to show cause, because the notice of motion procedure is slower and, therefore, SDRG has availed for itself even more time before it is compelled to deliver the shares.

Hazout does not contest any of the irreparable harm that Alpha Capital will suffer, absent the grant of the preliminary injunction, as set forth at pages 6-11 of the Ackermann affirmation which was submitted in support of Alpha Capital's initial motion for the preliminary injunction (annexed to the Brand Affirmation as Exhibit K). In short, SDRG itself has expressed doubt about its ability to continue as a going concern, SDRG admittedly is judgment proof in the United States and appears to be judgment proof even outside of the United States. Thus there is no assurance that SDRG will be able to respond to any ultimate award which the Court may grant to Alpha Capital. The value of SDRG's stock continues to decline. It stood at $0.67 per share when the injunction papers were served and now stands at $0.48 (see Exhibit L to the Brand

6

Affirmation). As is set forth in Alpha Capital's memorandum of law in support of its motion for a preliminary injunction, such inability to pay an ultimate judgment constitutes irreparable harm warranting the grant of injunctive relief. Additionally, as set forth in the Ackermann affirmation in support thereof, SDRG itself agreed that Alpha Capital would suffer irreparable harm if SDRG failed to deliver the shares, as agreed. SDRG presents no compelling reasons why the issuance of the additional 333,333 shares of stock will prejudice it. It already has outstanding over 66 million shares of stock (Exhibit M to the Brand Affirmation). An additional issuance of approximately one half of one percent of the already outstanding shares cannot have any adverse affect on SDRG.

Because Alpha Capital will continue to suffer irreparable harm until the shares are delivered, while SDRG will suffer no harm if it complies with the Court Order, the preliminary injunction should not be set aside.

C. SDRG's Default Appears To Be Willful

Although Hazout admits that he received the original motion papers on December 28, 2007, his only excuse for SDRG not appearing in the action is that for some unexplained reason Colin Sutherland had to review the papers and he was on vacation in Halifax (Hazout Affidavit, ¶16). Hazout does not deny that Stephen Cohen, SDRG's counsel, received an additional copy of the motion papers by e-mail on January 2, 2008. Thereafter, instead of retaining counsel to appear in the action, Hazout unilaterally decided to attempt to settle the case by making offers

wholly unacceptable to Alpha Capital (Brand Affirmation, p. 10). Hazout does not claim, and Brand specifically denies, that Alpha Capital ever indicated that it would adjourn the motion because Hazout was making offers to settle. A simple appearance for SDRG by Dorsey and Whitney, a law firm that represented SDRG on the underlying corporate transaction (or other counsel) on January 9 would, in all likelihood, been sufficient to obtain additional time for SDRG to respond to the motion.

Hazout does not set forth the date SDRG retained Dorsey and Whitney to bring on this motion to re-open the default (Hazout Affidavit ¶21). In all likelihood, SDRG retained that firm subsequent to January 25 when the Court issued the additional order prohibiting SDRG from issuing any securities, pending its compliance with the January 14 Order. That Order would compel SDRG's transfer agent, which was located in Texas, and, therefore, ultimately subject to the rulings of this Court, from issuing any further SDRG stock pending compliance with the January 14 Order. At that point, Alpha Capital submits, SDRG realized that it could not evade this Court's jurisdiction and retained counsel to re-open the default. SDRG's failure to appear in this action, based upon the facts, appears to be willful. This Court, therefore, should not re-open the default.

## Conclusion

For the foregoing reasons, SDRG's motion to re-open the default should be in all respects denied and the Court should award appropriate sanctions against Hazout and SDRG.

Respectfully submitted,

Law Offices of Kenneth A. Zitter

By _____
Kenneth A. Zitter, Esq.
Attorneys for Plaintiffs
Alpha Capital Anstalt
260 Madison Avenue
New York, New York 10016
212-532-8000
KAZ-3195